THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THOMAS BALDASAR, Defendant-Appellant.

Second District   No. 76-535

Opinion filed August 30, 1977.

306

RECHENMACHER, J., dissenting.

Ralph Ruebner, Peter B. Nolte, and Michael Mulder, all of State Appellate Defender's Office, of Elgin, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Phyllis J. Perko and Robert J. Anderson, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE NASH delivered the opinion of the court:

Defendant, Thomas O. Baldasar, after trial by jury, was convicted of theft of property not exceeding $150 in value, as a second offense, a Class 4 felony (Ill. Rev. Stat. 1973, ch. 38, pars. 16—1(a)(1), 16—1(e)(1)) and was sentenced to a term of one to three years in the penitentiary.

■■ The primary issue on this appeal is whether defendant's prior, uncounseled misdemeanor theft conviction could constitutionally be considered so as to elevate the present misdemeanor theft offense to a felony thereby increasing the possible penalty which might be imposed upon conviction. Defendant contends the holding of *Argersinger v. Hamlin* (1972), 407 U.S. 25, 32 L. Ed. 2d 530, 92 S. Ct. 2006, bars such consideration. We do not agree.

In May 1975 defendant was convicted after bench trial of a misdemeanor theft and was sentenced to a one-year term of probation and fined $159. There is evidence he was not represented by counsel in that trial and no evidence that defendant waived his right to counsel at that time. The present case was tried in August 1976 on an information in which the first petty theft conviction was alleged and proved at trial in order to invoke the enhanced penalty provisions of the Criminal Code provided for such recidivist conduct. (Ill. Rev. Stat. 1973, ch. 38, par. 16—1(e)(1).) As a consequence, after conviction, defendant was sentenced to the penitentiary for conduct for which the maximum penalty would have been a term of less than one year in a penal institution other than a penitentiary except for the enhanced penalty made possible by defendant's prior theft conviction.

In *Argersinger*, that defendant was convicted of a misdemeanor after a

trial conducted without counsel, where he had not waived his right to counsel, and he was sentenced to a term of 90 days in jail. In voiding that conviction, the United States Supreme Court stated,

> "We hold, therefore, that absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." (407 U.S. 25, 37, 32 L. Ed. 2d 530, 538, 92 S. Ct. 2006, 2012.)

Defendant contends that he has been imprisoned in the present case as a direct or collateral result of his prior uncounseled conviction, and the mandate of *Argersinger* has now been violated in that the earlier conviction was applied to enhance the penalty imposed for his subsequent theft conviction.

Defendant concedes that his earlier 1975 theft conviction was itself valid under *Argersinger*. While he was not represented by counsel in that trial, he also was not imprisoned after being convicted of that theft offense. The penalty then imposed for that offense of probation and a fine left that case in the category recognized but not passed upon by the court in *Argersinger* where it stated,

> "We need not consider the requirements of the Sixth Amendment as regards the right to counsel where loss of liberty is not involved, however, for here petitioner was in fact sentenced to jail." 407 U.S. 25, 37, 32 L. Ed. 2d 530, 538, 92 S. Ct. 2006, 2012.

In *Argersinger,* the court held that no person may be imprisoned for any offense, petty, felony or misdemeanor, unless he is represented by or has effectively waived his right to counsel at trial. It directed itself only to cases wherein an uncounseled defendant had been convicted of a criminal offense and was then sentenced to imprisonment for that offense and that conviction. There is no language in the opinion suggesting a prospective application or readjudication of a defendant's right to counsel should he be convicted in the future of the commission of another offense and be then subject to another sentence. The notion that repeat offenders are subject to enhanced penalties for their conduct is so basic to our criminal justice system that it could not have escaped the notice of the *Argersinger* court. Yet, it carefully limited its holding to a conviction and the sentence imposed for that conviction.

The limited scope of *Argersinger* is further expressed in its statement that,

> "The run of misdemeanors will not be affected by today's ruling. But in those that end up in the actual deprivation of a person's liberty, the accused will receive the benefit of 'the guiding hand of counsel' so necessary when one's liberty is in jeopardy." (407 U.S. 25, 40, 32 L. Ed. 2d 530, 540, 92 S. Ct. 2006, 2014.)

The "run of misdemeanors" would, indeed, be affected if we were to

accept defendant's argument that the *Argersinger* court intended by the phrase "end up" or any other language to have contemplated its application to the facts in the instant case. In addition to the second or subsequent offense sentencing provision in our theft statute, with which we are directly concerned here, there are at least 10 similar enhanced penalty statutes which could not then be applied against the repeat offender they are designed to affect even though his earlier convictions met the *Argersinger* requirements as in the instant case.[1]

While Illinois courts of review have previously considered applications of *Argersinger* in various contexts (*City of Danville v. Clark* (1976), 63 Ill. 2d 408, 348 N.E.2d 844, *cert. denied* (1976), 429 U.S. 899, 50 L. Ed. 2d 184, 97 S. Ct. 266; *People v. Morrissey* (1972), 52 Ill. 2d 418, 288 N.E.2d 397; *People v. Coleman* (1972), 52 Ill. 2d 470, 288 N.E.2d 396; *People v. Scott* (1976), 36 Ill. App. 3d 304, 343 N.E.2d 517; *People v. Kerner* (1975), 32 Ill. App. 3d 676, 336 N.E.2d 65; *People v. Schultz* (1974), 21 Ill. App. 3d 1086, 316 N.E.2d 183; *People v. Bailey* (1973), 12 Ill. App. 3d 779, 301 N.E.2d 481), none have decided the question we are presented in this case. Of those few states which have considered similar questions concerning the extension of *Argersinger,* five would tend to support defendant's position herein while two would reject it. The former include: *City of Monroe v. Fincher* (La. 1974), 305 So. 2d 108; *Alexander v. State* (1975), 258 Ark. 633, 527 S.W.2d 928; *Commonwealth v. Barrett* (Mass. App. 1975), 322 N.E.2d 89; *Maghe v. State* (Okla. Crim. App. 1973), 507 P.2d 950; and *State v. Kirby* (1972), 33 Ohio Misc. 48, 62 Ohio Op. 2d 25, 289 N.E.2d 406; and the latter are *Aldrighetti v. State* (Tex. Crim. App. 1974), 507 S.W.2d 770, and *State v. McGrew* (1974), 127 N.J. Super. 327, 317 A.2d 390 (1974). We find that the conclusion reached in *Aldrighetti,* as quoted below, correctly reflects the scope of *Argersinger.*

This court has considered similar issues in *People v. Placek* (1976), 43 Ill. App. 3d 818, 357 N.E.2d 660, and *People v. Heal* (1974), 20 Ill. App. 3d 965, 313 N.E.2d 670. In *Placek,* the defendant contended that the sentencing judge, before imposing a one to three year term in the penitentiary for a current felony offense, improperly considered a presentence report violative of defendant's constitutional rights because it listed a prior, uncounseled "shoplifting" conviction for which he had been

---

[1] This number includes the following statutes in which a misdemeanor offense is elevated to a felony upon a second or subsequent conviction as in the present case: Ill. Rev. Stat. 1975, ch. 38, par. 16—5(c) (theft from coin-operated machines), par. 16A—10 (retail theft), par. 22—53 (hypodermic syringes and needles act violations), par. 24—1(b) (unlawful use of weapons), par. 28—1(c) (gambling), par. 28—3 (keeping a gambling place), par. 37—1(b) (maintaining a public nuisance), par. 70—52(b) (inducements to sell or purchase real estate by reason of race, color or religion—prohibition of solicitation violations); ch. 56½, par. 704(c) (possession of cannabis), par. 1406(a), (b) (Controlled Substances Act, miscellaneous violations).

granted probation for one year. While stating that "[i]t is questionable whether *Argersinger* applies to a misdemeanor which does not, in fact, result in incarceration" (43 Ill. App. 3d 818, 821, 357 N.E.2d 660, 663), the court also acknowledged that a question remained as to the collateral consequences of the prior conviction on defendant's present conviction although he had not been earlier sentenced to imprisonment. This issue was not reached for decision in *Placek* as the matter was resolved on other grounds.

In *Heal,* the defendant contended the sentencing judge improperly considered evidence of his prior traffic convictions in assessing a fine against him for a current traffic conviction in the absence of a showing that he had been represented by counsel at such previous convictions. The court reviewed *Argersinger* and subsequent decisions of our supreme court in *People v. Morrissey* (1972), 52 Ill. 2d 418, 288 N.E.2d 397, and *People v. Coleman* (1972), 52 Ill. 2d 470, 288 N.E.2d 396, and concluded,

> "It is apparent, therefore, that *Argersinger* is oriented toward cases resulting in a jail or prison sentence and the doctrine of that case should have no application *where no confinement was imposed.* We do not believe it was ever intended to be extended to a traffic case where no incarceration, but only a fine, had been imposed.
>
> Dealing with this point, the Texas Court of Criminal Appeals, in an opinion delivered March 27, 1974, held as follows:
>
>> '[P]rior final convictions which are otherwise admissible may be used for the purpose of impeachment or enhancement of punishment even though obtained while the defendant was not represented by counsel and had not waived counsel, so long as the punishment assessed in the prior convictions did not include imprisonment.' *Aldrighetti v. State,* 507 S.W.2d 770 at 772.
>
> It is our opinion, therefore, that misdemeanors generally, where no sentence of confinement is imposed, are outside the contemplation of *Argersinger.*" *People v. Heal* (1974), 20 Ill. App. 3d 965, 968, 313 N.E.2d 670, 672.

While we recognize that *Heal* is factually distinguishable from the present case because the defendant therein was not imprisoned and because his uncounseled prior conviction was applied to a sentencing issue only and not for consideration as an element of a second offense prosecution as in this case, still we find the logic of the court's statements persuasive. They reflect our view that the *Argersinger* prohibition of imprisonment for any offense after an uncounseled conviction was limited in application to a single case in which a defendant was convicted and was not intended to limit the use of a properly obtained, although

uncounseled, conviction in future proceedings based upon subsequent conduct of a defendant. We believe this to be true whether such use of the conviction is sought to be made for purposes of impeachment, sentence determination or, as in the instant case, to establish an element of a second or subsequent offense prosecution for which an enhanced penalty might be imposed.

We do not accept defendant's contention that use of his prior, uncounseled theft conviction results either directly or collaterally in imprisonment for that offense. The fact is that he was sentenced to imprisonment for his second theft conviction only and not, as he suggests, sentenced again, and this time to imprisonment, for the first theft conviction. A similar argument to that advanced by defendant was urged in cases arising under the former Habitual Criminal Act (repealed effective January 1, 1964, by Ill. Rev. Stat. 1965, ch. 38, par. 126—1) whereby repeated criminal offenses by a defendant made him subject to enhanced penalties. Our supreme court held that where more severe punishment was imposed under the Act due to prior convictions the punishment was for the new crime only. (*People v. Kirkrand* (1947), 397 Ill. 588, 74 N.E.2d 813.) That logic should apply here.

We are further persuaded that should we go beyond the dictates of *Argersinger* and extend its principle to apply in this case there would be little rational reason then why it would not also apply to prohibit enhancement or aggravation of a sentence in such cases where, as in *Heal*, a sentencing judge necessarily considered past criminal conduct of a defendant, or to the use of a lawful, prior uncounseled conviction for purposes of the impeachment of defendant. The United States Supreme Court has not yet determined that the Sixth Amendment requires such extention and we will not do so hee.

The defendant also contends the jury was improperly instructed, thus requiring that the felony theft sentence imposed upon him be vacated and the cause remanded for resentencing as a misdemeanor.

The State introduced evidence of both the prior theft conviction we earlier discussed, which was alleged in the information, and also, after defendant testified, introduced a certified copy of defendant's prior armed robbery conviction for purposes of impeachment. The jury was correctly instructed on the elements of the offense of second offense theft, as charged, one element therein being that defendant had previously been convicted of the offense of theft. The jury was also correctly instructed by Illinois Pattern Jury Instructions, Criminal, No. 3.13, that "[e]vidence of the defendant's previous conviction of a crime is to be considered by you only insofar as it may affect his credibility as a witness, and must not be considered by you as evidence of his guilt of the crime with which he is

charged." No other instructions relating to the evidence of prior convictions were submitted to the jury.

He argues that if the jury followed the court's instruction contained in IPI Criminal No. 3.13 it could not have considered the former theft conviction (as well as the armed robbery conviction) as evidence of his guilt and, therefore, could not have found a necessary element of the offense charged, *i.e.,* defendant's prior theft conviction, leaving only the current misdemeanor theft alleged in the information to support the verdict of the jury.

■■ We find that defendant has waived any claim of error in the jury instructions by not objecting at the conference on instructions and by failing to raise the issue in his post trial motion. *People v. Ahlberg* (1973), 13 Ill. App. 3d 1038, 301 N.E.2d 608; *People v. Clark* (1976), 42 Ill. App. 3d 472, 355 N.E.2d 619.

■■ In any event there is no merit to this claim as any error in this regard was, at most, harmless. Evidence of two prior convictions of defendant was introduced at trial, each for a different and limited purpose. A limiting instruction applicable to the armed robbery conviction, introduced for impeachment purposes, was properly given. While we believe a similar limiting instruction designed to clearly differentiate between impeachment and proof of an element of the offense charged should have been given, defendant failed to offer such a limiting instruction to the trial court and will not be allowed to assert on appeal that the jury was not properly instructed. *People v. Willis* (1976), 43 Ill. App. 3d 535, 357 N.E.2d 576; *People v. Walls* (1965), 33 Ill. 2d 394, 211 N.E.2d 699.

*People v. Edwards* (1976), 63 Ill. 2d 134, 345 N.E.2d 496, relied upon by defendant, is not applicable to the present case. There a defendant was being tried on an indictment containing separate counts alleging both misdemeanor and felony offenses of unlawful use of weapons. (Ill. Rev. Stat. 1973, ch. 38, par. 24—1(a)(2), (b).) An element of the felony count was that defendant had been convicted of a felony or released from the penitentiary within the past five years. (Ill. Rev. Stat. 1973, ch. 38, par. 24—1(b).) A prior felony conviction of that defendant was introduced in evidence both to establish the necessary element of the felony count being tried and for purposes of impeachment after he testified. As in the present case, the jury was instructed to consider evidence of prior convictions for impeachment purposes only. The trial court, however, only instructed that jury as to the elements of the misdemeanor count charged and failed to instruct as to the felony count. Clearly, it was error for the trial court to then enter judgment against defendant on the felony count after the jury returned only a general verdict finding defendant

guilty of unlawful use of weapons which did not specify whether it was under the felony or misdemeanor count.

No similar confusion exists in the present case and there is no uncertainty as to the determination of the jury. We believe the jurors, in context, understood that the limiting instruction pertaining to impeachment did not prevent them from properly considering the prior theft conviction as evidence of an element of the present offense. Obviously, if they had not done so they would not have returned the guilty verdict as they did.

For the reasons stated herein the judgment of the trial court will be affirmed.

Affirmed.

BOYLE, J., concurs.

Mr. PRESIDING JUSTICE RECHENMACHER, dissenting:

I respectfully dissent. I recognize that the *Argersinger* court directed itself only to cases wherein an uncounseled defendant had been convicted of a criminal offense and was then sentenced to imprisonment for that offense and that conviction. I further recognize that in the instant case the 1975 theft conviction itself was valid under *Argersinger* because, while the defendant was not represented by counsel at trial, he also was not imprisoned following his conviction. However, I do not agree with the majority when they say the *Argersinger* court "carefully limited its holding to a conviction and the sentence imposed for that conviction."

I would analyze the broad "*Argersinger* problem" by breaking *Argersinger*-type cases down into four classifications:

(1) Uncounseled misdemeanor convictions; under *Argersinger* no jail sentence can be imposed unless defendant has counsel, or knowingly waives counsel.

(2) Cases like the instant case, where a defendant is subject to much more severe penalties in a subsequent case because of an earlier, uncounseled misdemeanor conviction. Imprisonment in such cases would be increased as a direct consequence of the earlier, uncounseled conviction.

(3) Cases similar to *People v. Heal* (1974), 20 Ill. App. 3d 965, wherein the court considers prior, uncounseled convictions that are contained in a presentence report. Although *Heal* did not really involve the *Argersinger* problem (since no jail sentence was imposed), the court's citation of *Aldrighetti v. State* (Tex. Crim. App. 1974), 507 S.W.2d 770, in the context of the use of the pre-sentence report, implies that prior, uncounseled misdemeanor convictions can be considered by the court in imposing

sentence. Certainly this is the view of *Heal* which both the State and the majority take.

(4) Cases like *Aldrighetti v. State* wherein the court approved the introduction of an earlier, uncounseled conviction for impeachment purposes. As noted, *Aldrighetti* was cited with approval in *Heal.*

Each one of the last three classes of cases present wholly different policy considerations, and a holding on a point (in one type of case) is thus distinguishable from a holding on a point involving one of the other types of cases. Thus, for example, in the instant case, proof of the prior, uncounseled conviction is an element of the State's case in chief and can only be proven through competent evidence, whereas for policy reasons, hearsay can be introduced in presentence reports or at a sentencing hearing, such as was at issue in *Heal.* Therefore, assuming the court approved the use of uncounseled convictions for impeachment and sentencing in *Heal,* in view of the different policy considerations that arise when the prior conviction is an element of the case in chief, *Heal* is no authority for the introduction of the earlier conviction in this case.

Further, in the instant case, two years of (potential) extra imprisonment are the direct result of the earlier conviction. In the *Aldrighetti* case, where the misdemeanor was introduced for impeachment purposes, the link between the prior conviction and the defendant's imprisonment was quite remote, or even speculative; it was impossible to state that, "but for" the earlier conviction, the defendant would not have gone to jail, or would have received a lesser sentence. The same can be said in the *Heal* context, though to a lesser extent, since sentencing involves the court's discretion, and prior convictions are but one factor in the exercise of that discretion. Clearly, in the instant case, imprisonment is a far more direct consequence of the use of the earlier conviction than would be the case in cases involving either impeachment or presentence reports.

In my opinion, it follows from these distinctions that a holding in this case, precluding the introduction of an uncounseled conviction as an element of the State's case in chief, leading directly to enhanced punishment, would not preclude the introduction of such convictions for impeachment, or in presentence reports. Thus, the holding here would only arise in convictions where the statute provides for an enhanced penalty upon a second conviction.

Turning to the primary question of whether uncounseled convictions can be used in this specific class of cases, it is my thought that the question should be answered in the negative. This court, and others, has held that *Argersinger* should be applied to invalidate prior convictions where "*the direct or collateral consequences* from uncounseled misdemeanor convictions relate to loss of liberty or imprisonment." (Emphasis added.) (*People v. Placek* (1976), 43 Ill. App. 3d 818, 821.) Here, the direct

314

consequence of the uncounseled misdemeanor conviction was an extra two years added to the defendant's maximum sentence. On this basis, it seems to me that the instant case falls within *Argersinger* and should be reversed and remanded for resentencing as a misdemeanor.